# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

JAMES CALHOUN-EL,

    Plaintiff,

    v.

HAMID KIABAYAN, M.D.,
DR. FRANCES ANN FORD,
LUM MAXIMUANGU, N.P.,
KASHAUN TEMESGEN, M.D,
SHARON BAUCOM, *Medical Director,*
*Department of Public Safety & Correctional*
*Services,*
J. PHILIP MORGAN, *Commissioner of*
*Correction,*
CAROLYN J. SCRUGGS, *Secretary,*
*Department of Public Safety & Correctional*
*Services,*
ROBERT L. GREEN, *Former Secretary,*
*Department of Public Safety & Correctional*
*Services,* and
SCOTT STEININGER, *Director,*
*Correctional Food Services,*

    Defendants.

Civil Action No.:  24-1491-TDC

---

## MEMORANDUM OPINION

James Calhoun-El, who was formerly incarcerated at Jessup Correctional Institution

("JCI") in Jessup, Maryland and is currently detained at the Central Detention Facility ("D.C. Jail")

in Washington, D.C., has filed this civil action pursuant to 42 U.S.C. § 1983 in which he alleges

that he was denied adequate medical care and a diabetic diet in violation of the Eighth Amendment

to the United States Constitution and was denied the right to the free exercise of his religion in

violation of the First Amendment to the United States Constitution.  Defendants Hamid Kiabayan,

M.D., Lum Maximuangu, N.P., and Kashaun Temesgen, M.D. (collectively, "the Medical Defendants") have filed a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment. Defendants Sharon Baucom, Robert L. Green, J. Philip Morgan, Carolyn J. Scruggs, and Scott Steininger (collectively, "the Correctional Defendants") have also filed a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment. Both Motions are fully briefed. Calhoun-El has filed two Motions for Default, ECF Nos. 32, 33, and the Medical Defendants have filed a Motion to Stay, ECF No. 40. Having reviewed the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, the Motions to Dismiss, or in the Alternative, for Summary Judgment will be GRANTED IN PART and DENIED IN PART. The remaining Motions will be DENIED.

## BACKGROUND

At all times relevant to the Complaint, Calhoun-El was incarcerated at JCI. Calhoun-El's claims address several medical issues, including vision loss and eye pain due to glaucoma, knee pain, diabetes, and the denial of a high-calorie diet. Separately, Calhoun-El alleges that he was prevented from practicing his religion when he was not allowed to keep prayer oils in his cell and was denied a ceremonial meal for a religious holiday.

### I. Medical Issues

Calhoun-El alleges that while incarcerated at JCI, he was denied adequate medical care for various health issues, including glaucoma, knee pain, and diabetes.

#### A. Eye Issues

As to glaucoma, Calhoun-El asserts that after he filed a grievance on March 25, 2021 about a loss of vision in one eye, he saw Defendant Dr. Hamid Kiabayan on May 27, 2021 for eye pain and worsening vision related to glaucoma, but Dr. Kiabayan denied him treatment. Then, on

2

January 24, 2022, Calhoun-El saw Defendant Dr. Frances Ann Ford, an optometrist, to whom he complained of ongoing pain and discomfort in both eyes. Dr. Ford recommended eye drops, but the drops made his condition worse. According to Calhoun-El, Dr. Ford also ordered a laser treatment for glaucoma and cataracts, but Calhoun-El did not receive that treatment and continued to have lost vision and eye pain. Calhoun-El alleges that he saw Dr. Ford again on February 17, 2022, but no action was taken to remedy his worsening glaucoma. Calhoun-El also asserts that Clarice Aryiku, a nurse practitioner, "recommended special treatment," but "no action was taken" by Dr. Ford. Compl. Ex. C ¶ 9, ECF No. 1-3.

###     B.    Knee Pain

On June 13, 2022, Calhoun-El placed a sick call request for chronic knee pain, and as a result he was placed on "feed in" status by Dr. Williams due to osteoarthritis in both knees. *Id.* ¶ 12. On September 19, 2022, during a chronic care visit, Dr. Williams ordered injections for Calhoun-El's knee pain. On February 6, 2023, Calhoun-El saw Dr. Krishnaswamy, an orthopedist, who determined that he needed magnetic resonance imaging ("MRI") on both knees in relation to a possible "torn meniscus and edema lesions." *Id.* ¶ 14. The MRI was denied by Utilization Management for YesCare, Inc., the contractor providing health care to Maryland Department of Public Safety and Correctional Services ("DPSCS") inmates. On February 25, 2023, Calhoun-El saw Defendant Lum Maximuangu, a nurse practitioner, for his knee pain, but no action was taken. Calhoun-El asserts that Dr. Kashaun Temesgen, the Medical Director for YesCare, as well as DPSCS Medical Director Sharon Baucom, former DPSCS Secretary Robert Green, and DPSCS Secretary Carolyn Scruggs, are responsible for the failure to provide the MRI.

### C.    Diabetes

On February 26, 2023, Dr. Temesgen approved the provision to Calhoun-El of Glucerna, which had been prescribed by Dr. Williams for low blood sugar, but Utilization Management discontinued the request.  According to Calhoun-El, he "fell into a diabetic coma" as a result of being denied Glucerna and was not provided any resulting treatment.  Compl. Ex. D ¶ 2, ECF No. 1-4.

Calhoun-El also alleges that in July 2021, he was not receiving a 2400-calorie diabetic diet, which caused him to have high glucose, frequent urination and "blur," and high cholesterol. Compl. Ex. C ¶ 25.  He alleges that this problem was the result of Defendant Scott Steininger, the Director of Correctional Food Services, failing to adhere to the Dietary Manual.

## II.    Religious Issues

Calhoun-El further alleges that on December 13, 2023, he placed a catalog order for religious oils pursuant to his "Moorish Moslem Religious practice" of praying three times a day while anointing himself with oil.  *Id.* ¶ 28.  He alleges that his religious exercise is substantially burdened by the fact that he cannot use such oil for prayer three times per day because he cannot store the oil in his cell, and he is not allowed to access the prison chapel outside of his faith group's designated time.  Calhoun-El asserts that Defendant Carolyn J. Scruggs, the DPSCS Secretary, denied a grievance he filed relating to this issue.

On January 2, 2024, Calhoun-El requested a ceremonial meal for a Moorish holiday.  He alleges that the request was denied pursuant to a directive in the DPSCS Religious Services Manual, which has been adopted by the Commissioner of Correction.  Calhoun-El asserts that this denial violated his First Amendment right to "Religious Freedom" and that he filed a grievance

about this issue on January 13, 2024, which was denied by Scruggs and Defendant J. Philip Morgan, the Commissioner of Correction. *Id.* ¶ 35.

## DISCUSSION

Construed liberally, the Complaint alleges that based on the failure to address Calhoun-El's eye, knee, and diabetes-related medical issues, Defendants acted with deliberate indifference to serious medical needs in violation of the Eighth Amendment prohibition on cruel and unusual punishment. The Complaint also alleges that the failure to permit Calhoun-El to use oils to pray in the prison chapel three times per day, and the failure to provide a ceremonial meal on the Moorish holiday, violated his First Amendment right to the free exercise of religion.

## I. Legal Standards

### A. Motions to Dismiss and for Summary Judgment

To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* A court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005). A self-represented party's complaint must be construed liberally. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007). However, "liberal construction does not mean overlooking the pleading requirements under the Federal Rules of Civil Procedure." *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020).

When deciding a motion to dismiss under Rule 12(b)(6), the Court considers only the complaint and any attached documents. *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Courts are permitted to consider documents attached to a motion to dismiss "when the document is integral to and explicitly relied on in the complaint, and when the plaintiffs do not challenge the document's authenticity." *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606–07 (4th Cir. 2015) (quoting *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004)). The Court finds that ARP No. JCI-0155-23, Corr. Defs.' Mot. Ex. 4, ECF No. 35-6, referenced in the Complaint and submitted with the Correctional Defendants' Motion, is integral the Complaint and may be considered in resolving that Motion to Dismiss. Where Calhoun-El references in the Complaint the DPSCS Religious Services Manual, OPS 140.0002 (2017) ("Religious Services Manual"), and it is a public document, the Court will take judicial notice of it and consider it in resolving the same Motion to Dismiss. *See Zak*, 780 F.3d at 607 (stating that on a motion to dismiss, courts may take judicial notice of "relevant facts obtained from the public record," if they are construed in the light most favorable to the plaintiff).

Rule 12(d) requires courts to treat such a motion as a motion for summary judgment where matters outside the pleadings are considered and not excluded. Fed. R. Civ. P. 12(d). Before converting a motion to dismiss to one for summary judgment, courts must give the nonmoving party "a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* "Reasonable opportunity" has two requirements: (1) the nonmoving party must have some notice that the court is treating the Rule 12(b)(6) motion as a motion for summary judgment; and (2) the nonmoving party must be afforded "a reasonable opportunity for discovery" to obtain information essential to oppose the motion. *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985). To show that a reasonable opportunity for discovery has not been afforded, the nonmoving party must file an

affidavit or declaration under Rule 56(d), or an equivalent filing, explaining why "for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d); *see Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244–45 (4th Cir. 2002).

Here, the notice requirement is satisfied by the titles of Defendants' Motions. As to discovery, Calhoun-El has submitted separate Rule 56(d) affidavits in relation to the two Motions. Specifically, as to the issues asserted in the Complaint, the Rule 56(d) affidavits assert that Calhoun-El needs discovery in relation to "medical deliberate indifference" and specifically seeks depositions of defendants and witnesses relating to the issues of his treatment for glaucoma, his knees, and Glucerna. Rule 56(d) Decl. ¶ 11, ECF No. 34. Though he mentions discovery relating to the administrative remedy procedure, he does not provide any particular reason or need to engage in discovery before resolving questions relating to exhaustion of administrative remedies or the First Amendment claims relating to religious oils and a ceremonial meal. The Court will therefore find that the Motion may be construed only as a Motion to Dismiss in relation to the Eighth Amendment claims. The Motion can and will be construed as a Motion for Summary Judgment in relation to the claims of exhaustion of administrative remedies and the First Amendment claims to the extent that submitted exhibits will be considered.

Under Rule 56, the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving party, "with all justifiable inferences" drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). A fact

is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is "genuine" only if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 248–49.

### B.    42 U.S.C. § 1983

Section 1983 provides that a plaintiff may file suit against any person who, acting under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983.

Liability under § 1983 attaches only upon personal participation by a defendant in the constitutional violation, or where the defendant otherwise condoned the violation. *Love-Lane v. Martin*, 355 F.3d 766, 782–83 (4th Cir. 2004). Absent personal participation, a supervisory official may be held liable only upon a showing that: (1) the supervisor had actual or constructive knowledge that a subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens such as the plaintiff; (2) the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to, or tacit authorization of, the alleged offensive practice; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).

### II.    Medical Defendants

Medical Defendants Dr. Hamid Kiabayan, Dr. Kasahun Temesgen, and Nurse Lum Maximuangu seek dismissal of the Eighth Amendment claims on the grounds that Calhoun-El has failed to state a valid claim against any of them for deliberate indifference to a serious medical need.

8

A.    **Deliberate Indifference**

The Eighth Amendment protects prisoners from "cruel and unusual punishments." U.S. Const. amend. VIII. To state an Eighth Amendment claim for inadequate medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Such deliberate indifference requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff was aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008).

Objectively, the medical condition at issue must be serious. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). A medical condition is serious when it is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko*, 535 F.3d at 241 (citation omitted). As for the subjective component, "[a]n official is deliberately indifferent to an inmate's serious medical needs only when he or she subjectively knows of and disregards an excessive risk to inmate health or safety." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). "[I]t is not enough that an official should have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Id.* (citations omitted). "[M]any acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Id.* Thus "[d]eliberate indifference is more than mere negligence, but less than acts or omissions done for the very purpose of causing harm or with knowledge that harm will result." *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016) (citations and internal alterations omitted). Under this standard, a mere disagreement between an inmate and a physician

9

over the appropriate level of care does not establish an Eighth Amendment violation absent exceptional circumstances. *Id.* Moreover, even if the requisite subjective knowledge is established, an official may avoid liability if the official "responded reasonably to the risk, even if the harm ultimately was not averted." *See Farmer v. Brennan*, 511 U.S. 825, 844 (1994).

### B.    Dr. Kiabayan

As to Dr. Kiabayan, Calhoun-El asserts that he filed a grievance on March 25, 2021 about lost vision in one eye, which was then dismissed by the Warden and denied by Dr. Kiabayan. Calhoun-El further alleges that he saw Dr. Kiabayan on May 27, 2021 for eye pain and worsening vision due to glaucoma and that Dr. Kiabayan denied him treatment. Although he does not specify what treatment, if any, he received in the subsequent months, he asserts that in January 2022, he was seen by Dr. Ford, an optometrist, and asserts that Dr. Ford recommended eyedrops as treatment for the glaucoma, which made his condition worse, and that she recommended a laser treatment, which he was denied. He thus alleges that he lost vision in his left eye and continued to suffer eye pain.

Glaucoma and vision loss are serious medical needs. Although the allegations against Dr. Kiabayan are limited, and there were other medical providers who were also aware of Calhoun-El's eye condition, the Court finds that where Calhoun-El has asserted that he lost vision as a result of a lack of effective treatment, he has sufficiently alleged an Eighth Amendment claim at this early stage of the case.

### C.    Dr. Temesgen

As to Dr. Temesgen, Calhoun-El generally alleges that he was the Medical Director for YesCare, which "fail[ed] to fulfill its contractual obligations . . . properly and on time" and that he denied an unspecified request. Compl. Ex. C ¶ 18. He further alleges that on February 26, 2023,

for purposes of treating diabetes, Dr. Temesgen approved Glucerna as prescribed by Dr. Williams, but that Utilization Management subsequently discontinued Glucerna. Calhoun-El alleges that as a result of that denial, he suffered "sweat" and a diabetic coma, and that he received no treatment. Compl. Ex. D ¶ 2.

Even accepting these allegations as true, the Court finds that they are insufficient to state an Eighth Amendment claim against Dr. Temesgen. The only specific allegation of any act or omission by Dr. Temesgen is that he approved the use of Glucerna. According to the Complaint, the decision to discontinue the use of Glucerna was made by YesCare's Utilization Management, not by Dr. Temesgen. Thus, the allegations do not support the conclusion that Dr. Temesgen either acted or failed to act with the subjective knowledge that he was creating an excessive risk to Calhoun-El's health or safety. As discussed above, the general allegation that Dr. Temesgen was the Medical Director of YesCare is insufficient to establish supervisory liability, because Calhoun-El does not allege facts showing that Dr. Temesgen was actually aware that a subordinate's medical treatment or failure to treat was creating such an excessive risk, and that he responded to that knowledge in a way that was so inadequate as to show deliberate indifference and as to cause the harm to Calhoun-El. *See Shaw*, 13 F.3d at 799. The Court therefore finds that the Amended Complaint fails to state an Eighth Amendment claim against Dr. Temesgen.

### D.    Nurse Maximuangu

The allegations against Nurse Maximuangu are limited to the claim that on February 25, 2023, she examined Calhoun-El for pain in both knees but took no action. This single allegation is insufficient to state a claim of deliberate indifference to a serious medical need. First, although Calhoun-El separately alleges that an orthopedist had recommended an MRI to determine if he had a torn meniscus or edema lesions, he does not provide allegations about the actual condition

11

of his knees at that time, the symptoms he described to Maximuangu or that were demonstrated during that visit, or the specific information available to Maximuangu about the condition of his knees. Thus, even assuming that Calhoun-El's knee pain was sufficiently problematic that it could be construed as a serious medical need, the allegations are insufficient to support an inference that Maximuangu subjectively knew that the failure to take any specific medical step presented an "excessive risk" to Calhoun's health or safety. *Jackson*, 775 F.3d at 178. Indeed, Calhoun-El does not describe any specific adverse consequence resulting from Maximuangu's failure to take any action during the February 25, 2023 medical visit. Accordingly, the Court finds that Calhoun-El has failed to state a valid Eighth Amendment claim against Maximuangu.

## III.    Correctional Defendants

In their Motion, the Correctional Defendants assert that Calhoun-El's claims against them should be dismissed because (1) they are entitled to immunity under the Eleventh Amendment to the Constitution on any claims against them in their official capacities; (2) Calhoun-El failed to exhaust administrative remedies; (3) the Complaint fails to allege personal participation in any constitutional violations by the Correctional Defendants; (4) the allegations otherwise fail to state a claim; and (5) the Correctional Defendants are entitled to qualified immunity.

### A.    Eleventh Amendment

Although Calhoun-El has not stated whether he is suing Defendants in their official or individual capacities, the Correctional Defendants argue that because they are employees of the State of Maryland, any claims against them in their official capacities are barred by the Eleventh Amendment. *See* Md. Code Ann., State Gov't § 12-101(a) (LexisNexis 2025) (defining "[s]tate personnel"). Suits against state officials or employees in their official capacities are suits against the State itself. *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989). Under the Eleventh

12

Amendment, absent consent, a state, its agencies, and departments are immune from suits in federal court brought by its citizens or the citizens of another state. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Although the State of Maryland has waived its sovereign immunity for certain types of cases brought in state courts, *see* Md. Code Ann., State Gov't § 12–201(a) (LexisNexis 2025), it has not waived its immunity under the Eleventh Amendment to suit in federal court. Thus, any claims against the Correctional Defendants in their official capacities are barred by the Eleventh Amendment and will be dismissed.

**B.     Exhaustion of Administrative Remedies**

The Correctional Defendants assert the affirmative defense that Calhoun-El has failed to exhaust administrative remedies as to his claims against them relating to the failure to provide medical care, a diabetic diet, and religious meals. Under the Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e(a):

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

*Id.* Inmates must exhaust administrative remedies before they bring any "suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

Exhaustion is mandatory and generally may not be excused unless the administrative procedure is not available. *See Ross v. Blake*, 578 U.S. 632, 642 (2016) (holding that an inmate "must exhaust available remedies, but need not exhaust unavailable ones"). "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). In *Ross*, the United States Supreme Court identified three circumstances when an administrative

remedy is unavailable. An administrative procedure is not available when officers are consistently unwilling or unable to provide relief to aggrieved inmates, the procedure is so opaque that it is practically incapable of use, or prison administrators actively thwart inmates from filing grievances. *Ross*, 578 U.S. at 643–44.

In the Maryland state prison system, exhaustion of administrative remedies requires that a prisoner first file an Administrative Remedy Procedure grievance, known as an "ARP," with the warden of the prison within 30 days of the incident at issue. *See* Md. Code Regs. 12.02.28.05(D)(1) (2025) (requiring filing with the "managing official"); Md. Code Regs. 12.02.28.02(B)(14) (defining "managing official" as "the warden or other individual responsible for the management of a correctional facility"); Md. Code Regs. 12.02.28.09(B) (setting the 30-day deadline). Second, if the ARP is denied, or the prisoner does not receive a timely response, the prisoner must file an appeal with the Commissioner of Correction within 30 days. *See* Md. Code Regs. 12.02.28.14(B)(5). If that appeal is denied, the prisoner must file a further appeal within 30 days to the Incarcerated Individual Grievance Office ("IIGO"). *See* Md. Code Ann., Corr. Servs. § 10–206(a) (LexisNexis 2025); Md. Code Regs. 12.07.01.05(B).

Exhaustion requires full completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006). This requirement is one of "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits).'" *Woodford*, 548 U.S. at 90 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). Here, Defendants have established that Calhoun-El did not exhaust administrative remedies on his claim based on the failure to provide him with a high-calorie diet. Although Calhoun-El submitted an ARP relating to this issue, upon receiving an appeal from the

14

ARP, the IIGO directed Calhoun-El to submit the response from the Commissioner of Correction to the first-level appeal of the ARP as well as a copy of the medical order for a high-calorie diet and warned that a failure to comply would result in dismissal. When Calhoun-El failed to submit these materials, the IIGO dismissed the appeal. Under these circumstances, the Court finds that Calhoun-El did not properly exhaust administrative remedies as to the high-calorie diet claim and will therefore dismiss that claim without prejudice.

The Court, however, does not find that the Correctional Defendants have established a failure to exhaust administrative remedies as to the claims against them for the failure to provide medical care or to provide a celebratory meal for a religious holiday. Although they have submitted a declaration by IIGO Executive Director F. Todd Taylor, Jr. that discusses Calhoun-El's history of filing grievances or appeals with the IIGO, the declaration does not directly address whether any grievances or appeals were filed with the IIGO relating to any of the issues in this case other than the high-calorie diet and religious oils issues. Accordingly, the Court will not dismiss Calhoun-El's claims against the Correctional Defendants for the failure to provide medical care and for the denial of a religious celebratory meal on the basis of a failure to exhaust administrative remedies.

### C.      Eighth Amendment Claims

Although Calhoun-El appears to assert Eighth Amendment claims against the Correctional Defendants based on the allegedly inadequate medical care, the allegations are insufficient to support such claims because he has not alleged facts showing that they were personally involved in Calhoun-El's medical care or are subject to supervisory liability for claims relating to such care. As to Baucom, Calhoun-El alleges only that Baucom "has responsibility for the Medical Health Care and Utilization Services Contract," Compl. Ex. C ¶ 17, but he provides no facts showing that

Baucom had any knowledge of the alleged failures to provide medical care and failed to act in response to such knowledge. Similarly, Calhoun-El generally alleges that Green, the former Secretary of DPSCS, "had actual and constructive knowledge that it was a DOC policy to ignore Plaintiff's medical conditions," *id.* ¶ 19, but he provides no facts that would support the conclusion that there was any such policy or that Green had any knowledge of Calhoun-El's medical treatment. As for DPSCS Secretary Scruggs, Calhoun-El generally alleges that she "fail[ed] to properly train and supervise the JCI Defendants," *id.* ¶ 20, with no additional facts specifying what training was at issue, whether it related to the provision of medical care for the conditions at issue in this case, or how it caused any Eighth Amendment violations. Finally, he generally alleges that Baucom, Green, and Scruggs denied a request without specifying what the request was about. Where these allegations do not support the inference that any of these Correctional Defendants were personally liable for, or subject to supervisory liability for, deliberate indifference to a serious medical need, the Court will dismiss the Eighth Amendment claims against them.

Finally, although the claim relating to the failure to provide a high-calorie diet will be dismissed based on the failure to exhaust administrative remedies, the Court also finds that the allegations relating to this claim are insufficient. As to the only Correctional Defendant arguably identified as responsible for this issue, Steininger, Calhoun-El alleges only that he was the Director of Correctional Food Services, that he "failed to adhere to the Dietary Manual," and that he denied an unspecified dietary request. *Id.* ¶¶ 26–27. These general allegations are insufficient to state a plausible claim that Steininger knew that Calhoun-El had a serious medical need, that any particular diet was necessary to avoid an excessive risk to his health or safety arising from that need, and that he nevertheless acted in a way that imposed that risk. *See Jackson*, 775 F.3d at 178.

Thus, the Eighth Amendment claim relating to a high-calorie diet will also be dismissed for failure to state a claim.

###### D.    First Amendment Claims

As for the First Amendment claims relating to free exercise of religion, as a general matter, inmates "retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). To state a claim for a violation of rights under the Free Exercise Clause, Calhoun-El must demonstrate that: (1) he holds a sincere religious belief; and (2) a prison practice or policy places a substantial burden on his ability to practice his religion. *See Wilcox v. Brown*, 877 F.3d 161, 168 (4th Cir. 2017). A substantial burden is placed upon a prisoner's religious exercise when it "put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Id.* However, "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Id.* (quoting *Price v. Johnson*, 334 U.S. 266, 285 (1948)). Thus, prison restrictions that affect inmates' religious exercise but are reasonably related to legitimate penological objectives do not run afoul of the Constitution. *See Turner v. Safley*, 482 U.S. 78, 89–91 (1987). To determine whether a prison regulation is reasonable, and therefore constitutional, courts consider four factors:

> (1) whether there is a "valid, rational connection" between the prison regulation or action and the interest asserted by the government, or whether this interest is "so remote as to render the policy arbitrary or irrational"; (2) whether "alternative means of exercising the right . . . remain open to prison inmates"; (3) what impact the desired accommodation would have on security staff, inmates, and the allocation of prison resources; and (4) whether there exist any "obvious, easy alternatives" to the challenged regulation or action.

*Wall v. Wade*, 741 F.3d 492, 499 (4th Cir. 2014) (quoting *Lovelace v. Lee*, 472 F.3d 174, 200 (4th Cir. 2006)).

Calhoun-El alleges that his right to free exercise of his religion has been infringed upon because as a Moorish Muslim, it is part of his religious practice to pray three or more times daily using a few drops of scented oil, but he cannot do so because he cannot keep the oils in his cell and he is not allowed to access the chapel outside of his faith group's designated time. The only defendant he references in relation to this claim is Scruggs, whom he alleges "denied Plaintiff['s] request" relating to the prayer oils, specifically, ARP No. JCI-0155-23. Compl. Ex. C ¶ 32. However, that ARP and the accompanying documentation, which is integral to the Complaint, *see supra* part I.A, shows that other officials, not Scruggs, were involved in the review of and decisions relating to this ARP, and as is evident from the description of the ARP process previously provided, the DPSCS Secretary has no role in the adjudication of such requests. There are no allegations supporting the inference that Scruggs had sufficient knowledge of and participation in this decision so as to be subject to supervisory liability. The Court therefore finds that Calhoun-El has not stated a First Amendment claim against Scruggs relating to this issue.

As for Calhoun-El's other First Amendment claim, he was denied a ceremonial meal relating to a Moorish holiday on January 8, 2024 based on the 2017 Religious Service Manual, that Manual actually authorizes a ceremonial meal for the Moorish holiday, Religious Services Manual OPS 140.0002 App'x 3, so there is no plausible claim that the DPSCS policy violated the First Amendment as to this issue. Calhoun-El's claim is therefore that, in contravention of that policy, his request on January 2, 2024 to attend a January 9, 2024 ceremonial meal was denied in that specific instance.

Although Calhoun-El does not assert facts specifically identifying how and why he was denied the ceremonial meal on this occasion and who made that decision, he asserts that both Morgan and Scruggs denied ARP No. JCI-0166-24, which related to this request. Notably, the

Correctional Defendants do not dispute this characterization of ARP No. JCI-0166-24, and they do not dispute that Calhoun-El was not permitted to attend the meal or provide any reason for that denial. Under these circumstances, at this early stage, the Court will not dismiss this claim as to Defendants Morgan and Scruggs based on a failure to state a claim.

### E.    Qualified Immunity

The Correctional Defendants also seek dismissal based on qualified immunity. Government officials sued in their individual capacities may invoke qualified immunity. *Bland v. Roberts*, 730 F.3d 368, 391 (4th Cir. 2013). "Qualified immunity protects government officials from civil damages in a § 1983 action insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 250 (4th Cir. 1999)). To overcome an assertion of qualified immunity from a § 1983 claim, a plaintiff must show that (1) the government official violated a federally protected right of the plaintiff; and (2) that right was clearly established at the time of the alleged misconduct, in that a "reasonable official would understand that what he is doing violates that right." *Id.* In assessing whether a right is clearly established, a court "first examines 'cases of controlling authority in [this] jurisdiction,'" here, the United States Supreme Court, the United States Court of Appeals for the Fourth Circuit, and the Supreme Court of Maryland. *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 538 (4th Cir. 2017) (quoting *Amaechi v. West*, 237 F.3d 356, 363 (4th Cir. 2001)). If that authority is not dispositive, the Court may still consider "'a consensus of cases of persuasive authority' from other jurisdictions" as a basis to find that conduct was barred by clearly established law. *Id.* at 539 (quoting *Owens ex rel. Owens v. Lott*, 372 F.3d 267, 280 (4th Cir. 2004)). When considering whether there is such a "consensus,"

19

a court considers not only the broad holdings of those cases but also the specific requirements adopted by each court. *See Owens ex rel. Owens v. Lott*, 372 F.3d 267, 280 (4th Cir. 2004).

The only remaining claim against the Correctional Defendants in their individual capacities is the First Amendment claim as to the denial of a ceremonial religious meal. Where the Court has found the allegations sufficient to state such a claim, the remaining question is whether the right at issue was clearly established at the time. Although the Correctional Defendants argue that the right at issue was not clearly established, they have provided no specific argument demonstrating that position. Though Calhoun-El has not identified controlling authority or a consensus of persuasive authority showing that the First Amendment claim asserts a violation of clearly established law, the Court notes that Calhoun-El is self-represented and thus may not have been a position to conduct a thorough analysis of relevant case law to address this question. Where Defendants have not offered sufficient analysis on this point, and Calhoun-El will likely have counsel appointed to address the remaining Eighth Amendment claim, the Court will decline to resolve the qualified immunity issue until Calhoun-El's counsel has had the opportunity to address the legal aspect of this question. The Motion will therefore be denied without prejudice on this issue.

## IV.   Remaining Motions

Because the Correctional Defendants' Motion was not timely filed, Calhoun-El filed a Motion for a Clerk's Entry of Default and a Motion for a Default Judgment against the Correctional Defendants. Generally, a default may be entered "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a). Entry of default is not favored and is reserved for cases in which the adversary process has been halted by an unresponsive party. *See Colleton*

*Preparatory Acad., Inc. v. Hoover Universal, Inc.*, 616 F.3d 413, 417 (4th Cir. 2010) ("We have repeatedly expressed a strong preference that, as a general matter, defaults be avoided and that claims and defenses be disposed of on their merits."). Here, at the time that Calhoun-El moved for default, the Correctional Defendants had appeared in the case and had requested extensions of time to respond to the Complaint. Where the Correctional Defendants have now acted to defend the case on the merits, and there is no apparent prejudice to Calhoun-El, the Motion for Entry of Default and the Motion for a Default Judgment will be denied.

Finally, the Medical Defendants filed a Motion to Stay based on proceedings pending in *In re Tehum Care Services, Inc.*, No. 23-90086, in the United States Bankruptcy Court for the Southern District of Texas, a case relating to the bankruptcy of their former employer, Corizon Health, Inc. However, on August 7, 2025, the bankruptcy court issued a decision on a Motion to Enjoin Plaintiffs from Prosecuting Released Parties in which it specifically determined that Calhoun-El is not a plaintiff enjoined from continuing to litigate his pending case in this Court against the Correctional Defendants. Order at 6 & Ex. B, Dkt. No. 2374, *In re Tehum Care Servs., Inc.*, No. 23-90086 (Bankr. S.D. Tex. Aug. 7, 2025). Accordingly, the Motion to Stay will be denied.

## CONCLUSION

For the foregoing reasons, the Medical Defendants' Motion to Dismiss or Alternatively for Summary Judgment will be GRANTED IN PART and DENIED IN PART in that it will be granted as to the claims against Nurse Lum Maximuangu and Dr. Kashaun Temesgen and denied as to the claims against Dr. Hamid Kiabayan. The Correctional Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment will be GRANTED IN PART and DENIED IN PART in that it will be granted as to the Eighth Amendment claims and the First Amendment claim relating to

religious oils and will be otherwise denied. Calhoun-El's Motion for Entry of Default and Motion for Default Judgment will be DENIED, and the Medical Defendants' Motion to Stay will be DENIED. A separate Order shall be issued.


Date: March 26, 2026

THEODORE D. CHUANG
United States District Judge